NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

OCT 22 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 19-10032 |
| Plaintiff-Appellee, | D.C. No. 1:12-cr-00012-1 |
| v. | |
| WEI LIN, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of the Northern Mariana Islands
David O. Carter, District Judge, Presiding

Submitted October 20, 2020**
Honolulu, Hawaii

Before: WALLACE, BEA, and BENNETT, Circuit Judges.

Defendant Wei Lin pleaded guilty to conspiracy to commit sex trafficking,

in violation of 18 U.S.C. § 1594(c). Lin appeals from his 120-month sentence,

arguing that the district court erred in applying United States Sentencing Guideline

§ 2G1.1(c) for the first time on resentencing. He also challenges the district

---

* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

** The panel unanimously concludes this case is suitable for decision
without oral argument. See Fed. R. App. P. 34(a)(2).

court's denial of his motion to withdraw his guilty plea. We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, and we affirm.

1.     As relevant here, § 2G1.1(c) applies if an offense involves conduct described in 18 U.S.C. § 2242. U.S.S.G. § 2G1.1(c). Conduct described in § 2242 includes "causing another person to engage in . . . a sexual act with another person by threatening or placing the victim in fear (other than by threatening or placing the victim in fear that any person will be subject to death, serious bodily injury, or kidnapping). . . ." U.S.S.G. § 2G1.1, cmt. n.4(B).

Lin argues that "fear" as used in § 2242 must be construed narrowly to mean fear of bodily harm, excluding other types of fear such as fear of deportation. We need not decide whether "fear" under § 2242 includes fear other than fear of bodily harm because the district court correctly found that Lin threatened his victims with physical violence to force them to engage in commercial sex. We review the district court's factual findings for clear error. *See United States v. Yi*, 704 F.3d 800, 805 (9th Cir. 2013).

The victims all told very similar stories in their written statements. Lin lured the victims to travel to Saipan under the false promise of lawful employment and charged them thousands of dollars in fees. Once the victims arrived in Saipan, Lin took their passports and told them that they would be "hostesses" who had sex with customers. They were afraid of Lin because, among other things, he threatened

2

them with physical harm.  The victims' statements were consistent with one another, and they were also corroborated by statements of other witnesses.  For example, Yanchun Li (Lin's co-conspirator) signed a plea deal in which Li admitted that the conspirators caused the victims to engage in commercial sex acts by "verbally abusing them; threatening them with physical violence; and falsely claiming to have favorable relationships with corrupt government officials."  The district court properly considered the victims' and Li's hearsay statements because they were accompanied by at least "some minimal indicia of reliability."  *United States v. Berry*, 258 F.3d 971, 976 (9th Cir. 2001) (quoting *United States v. Petty*, 982 F.2d 1365, 1369 (9th Cir. 1993)).  Based on the substantial evidence showing that Lin threatened his victims with physical harm, the district court did not clearly err in finding that clear and convincing evidence[1] supported that Lin threatened his victims with physical harm to cause them to engage in commercial sex.

We are unpersuaded by Lin's remaining arguments challenging the application of § 2G1.1(c).  Lin does not identify any case that has held the government violated due process by relying on a new guideline during resentencing.  Indeed, such a position goes against our general rule that "[o]n remand, the district court generally should be free to consider any matters relevant

---

[1] The parties agree that the government needed to present clear and convincing evidence to support the application of § 2G1.1(c) because it greatly increased Lin's base offense level from 14 to 30.

to sentencing, even those that may not have been raised at the first sentencing hearing, as if it were sentencing de novo." *United States v. Matthews*, 278 F.3d 880, 885–86 (9th Cir. 2002). Lin cannot rely on the Sixth Amendment's speedy trial guarantee, as the Supreme Court has held that the right does not apply once the defendant has pleaded guilty. *See Betterman v. Montana*, 136 S. Ct. 1609, 1617–18 (2016). Lin also argues that the defense of laches bars the government from requesting the application of a new sentencing guideline on resentencing. But he fails to identify any case that has applied laches in the criminal context, and he offers no convincing policy reason why laches should apply.

For the reasons stated above, we conclude that the district court did not err in applying § 2G1.1(c) on resentencing.

2. Lin argues that his guilty plea cannot stand because his attorney failed to inform him accurately of the sentencing range he faced. The district court denied Lin's motion to withdraw his guilty plea because the record shows that Lin understood his sentencing exposure before pleading guilty. We review the district court's denial for abuse of discretion. *See United States v. Garcia*, 909 F.2d 1346, 1348 (9th Cir. 1990).

The district court did not abuse its discretion. The record shows that although Lin's attorney provided him with an erroneous sentencing *prediction*, Lin was well-aware that he was facing a potential sentence of up to life in prison. *See*

4

*id.* ("[I]t is well established that an erroneous prediction by a defense attorney concerning sentencing does not entitle a defendant to challenge his guilty plea."). Lin's plea agreement clearly informed him that he faced a "maximum statutory sentence [of] life imprisonment," and that "the Court [had] not yet determined a sentence and that any estimate of the advisory sentencing range . . . the defendant may have received from the defendant's counsel . . . is a prediction, not a promise, and is not binding on . . . the Court." The colloquy between the court and Lin during the change of plea hearing also shows that he was aware of his sentencing exposure. Finally, Lin's own declaration shows that his attorney advised him that the maximum potential sentence was life in prison.

**AFFIRMED.**